## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| *In re MedStar Health Data Security Incident* | Case No. 1:24-cv-01335-BAH |
| | CLASS ACTION |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................... 1

II.     CASE SUMMARY................................................................................................. 1

   A. Background ...................................................................................................... 1

   B. Procedural Posture .......................................................................................... 2

   C. Timing of Settlement Negotiations ................................................................. 2

III.    THE PROPOSED SETTLEMENT PROVIDES SETTLEMENT CLASS MEMBERS
        WITH MONETARY AND NON-MONETARY BENEFITS ................................ 3

   A. Monetary Relief .............................................................................................. 3

   B. The Settlement Class........................................................................................ 3

   C. The Settlement Benefits .................................................................................. 4

        i.    Cash Payment A – Documented Losses .................................................. 4

        ii.   Cash Payment B – Alternate Cash Payment ........................................... 4

        iii.  Medical Data Monitoring......................................................................... 5

   D. Notice .............................................................................................................. 5

   E. Claims, Exclusions and Objection Procedures ............................................... 6

        i.    Claims ..................................................................................................... 6

        ii.   Opt-Outs ................................................................................................. 6

        iii.  Objections ............................................................................................... 7

   F. Service Awards, Attorneys' Fees, Costs, and Expenses ................................. 8

   G. Releases............................................................................................................ 9

IV.     LEGAL STANDARD............................................................................................. 9

V.      ARGUMENT .......................................................................................................... 10

   A. The Settlement Class Should be Preliminarily Certified. .............................. 10

        i.    The Proposed Settlement Class is Sufficiently Numerous ................... 11

        ii.   Questions of Law and Fact Are Common to the Settlement Class....... 11

        iii.  Plaintiffs' Claims and Defenses are Typical of the Class..................... 13

        iv.   Settlement Class Representatives and Settlement Class Counsel Will Provide Fair
              and Adequate Representation of the Class............................................. 14

v.  The Rule 23(b)(3) Requirements Are Satisfied ...................................................... 14

B.  The Terms of the Settlement are Fair, Reasonable, and Adequate, Warranting Preliminary Approval Under Rule 23(a)(4). .............................................................. 16

i.  The Settlement is Adequate and Reasonable ......................................................... 17

ii.  The Settlement is Fair. ........................................................................................... 20

C.  The Proposed Claims Administrator Will Provide Adequate Notice. ....................... 21

D.  The Court Should Appoint Settlement Class Counsel. ............................................... 23

VI.  CONCLUSION ................................................................................................................. 24

## TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................10, 14, 16, 19

*Berry v. Schulman*,
    807 F.3d 600 (4th Cir. 2015) ...............................................................................9

*Birks v. Small Cmty. Specialists, L.L.C.*,
    No. 8:23-cv-00837-BAH, 2024 U.S. Dist. LEXIS 238933 (D. Md. Dec. 10, 2024)...................9

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ...............................................................................13

*Brown v. Transurban USA, Inc.*,
    318 F.R.D. 560 (E.D. Va. 2016) ...............................................................................14

*Clark v. Experian Info. Sols., Inc.*,
    No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004) ................................17

*Decohen v. Abbasi, LLC*,
    299 F.R.D. 469 (D. Md. 2014) ...............................................................................23

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006) ...............................................................................13

*Domonoske v. Bank of America, N.A.*,
    790 F. Supp. 2d 466 (W.D. Va. 2011) ...............................................................................23

*Ealy v. Pinkerton Gov't Servs.*,
    514 F. App'x 299 (4thCir. 2013) ...............................................................................15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...............................................................................22

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) ...............................................................................9

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec. 16, 2019).........18

*Gray v. Hearst Commc'ns, Inc.*,
    444 F. App'x 698 (4th Cir. 2011) ...............................................................................15

*Hapka v. Carecentrix, Inc.*,
  No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018)..................15

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*,
  855 F. Supp. 825 (E.D.N.C. 1994) ...................................................................................10, 17

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
  No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) ....................19

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009) ....................13

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
  No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019) ...................................................................11

*In re Equifax Customer Data Sec. Breach Litig.*,
  No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020), *partially
  overturned on other grounds*, 999 F.3d 1247 (11th Cir. 2021) ................................12, 14, 15, 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013) ....................................................................................................19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012)........................................................................11, 13, 15

*In re Home Depot Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113 (N.D. Ga. Aug. 23, 2016) .......12, 15

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ...........................................................................................9, 17, 20

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod.
Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) .......................................................................................................9

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................................................................17

*In re Mid-Atlantic Toyota Antitrust Litig.*,
  564 F. Supp. 1379 (D. Md. 1983) .................................................................................9, 10, 17

*In re Montgomery Cty. Real Estate Antitrust Litig.*,
  83 F.R.D. 305 (D. Md. 1979).......................................................................................................9

*In re Mut. Funds Inv. Litig.*,
  No. MDL 1586, 2010 U.S. Dist. LEXIS 57623 (D. Md. May 19, 2010) ..................................23

*In re Novant Health, Inc.*,
  No. 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949 (M.D.N.C. June 17, 2024)...........................20

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  309 F.R.D. 482 (D. Minn. 2015) ...............................................................................11

*In re Titanium Dioxide Antitrust Litig.*,
  284 F.R.D. 328 (D. Md. 2012) ..................................................................................11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ...............................................................................................22

*Peoples v. Wendover Funding, Inc.*,
  179 F.R.D. 492 (D. Md. 1998) ..................................................................................11

*S.C. Nat'l Bank v. Stone*,
  139 F.R.D. 335 (D.S.C. 1991)..............................................................................17, 20

*Shenker v. Polage*,
  226 Md. App. 670 (2016).............................................................................................9

*Soutter v. Equifax Info. Servs., LLC*,
  307 F.R.D 183 (E.D. Va. 2015) .................................................................................14

*Stillmock v. Weis Markets, Inc.*,
  385 F. App'x 267 (4th Cir. 2010)...............................................................................15

*United States v. Manning Coal Corp.*,
  977 F.2d 117 (4th Cir. 1992) .....................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................................11

Other Authorities

7A Charles Wright, Arthur Miller & Mary Kay Kane,
  FEDERAL PRACTICE AND PROCEDURE (3d ed. 2005) ......................................................16

7B Charles Alan Wright et al.,
  FEDERAL PRACTICE AND PROCEDURE (3d ed. 2006) ......................................................21

Federal Rule of Civil Procedure 23 ............................................................................*passsim*

*Manual for Complex Litigation* (3rd ed. 1995)............................................................10

*Manual for Complex Litigation* (4th ed. 2013)..............................................................10

## I.    INTRODUCTION

This case arises from a data incident that Plaintiffs Gwendolyn Riddick, Tina Goldsmith, Tracy Sanders, Evelyn Rios, Annie Slaton, and David Richter ("Plaintiffs") allege compromised the security of their personally identifiable information ("PII") and/or personal health information ("PHI", and together with PII, "Personal Information"). After extensive arm's-length negotiations, the Parties have negotiated a non-reversionary common fund Settlement that provides significant relief for the Settlement Class Representatives and the Settlement Class.[1]

For the reasons stated below, the Settlement is fair, reasonable, and adequate. Accordingly, it should be preliminarily approved by the Court, and notice should be provided to Settlement Class Members.

## II.    CASE SUMMARY

### A.  Background

Defendant MedStar Health, Inc. ("MedStar" or "Defendant") is a healthcare company that has more than 300 care locations in Maryland, Virginia, and Washington, D.C. *See* Class Action Complaint, ECF No. 1 ("CAC") ¶ 16. Intermittently between January 25, 2023 and October 18, 2023, an unauthorized third party gained access to email accounts for three of Defendant's employees and accessed files containing Personal Information (the "Data Incident"). *Id*. ¶ 27. While the exposed data elements varied by individual, it may have included individuals' names, mailing address, dates of birth, dates of service, provider names, and health insurance information. *Id*.

---

[1] Unless separately defined herein, all capitalized terms in this motion refer to defined terms in the Settlement Agreement ("SA", attached hereto as **Exhibit A**).

### B.  Procedural Posture

Plaintiffs filed six lawsuits against MedStar relating to the Data Incident: *Riddick v. MedStar Health, Inc.*, No. 1:24-cv-01335, *Richter v. MedStar Health, Inc.*, No. 1:24-cv-01337, *Goldsmith v. MedStar Health, Inc.*, No. 1:24-cv-01371, *Sanders v. MedStar Health, Inc.*, No. 1:24-cv-01377, *Rios v. MedStar Health, Inc.*, No. 1:24-cv-01418, and *Slaton v. MedStar Health, Inc.*, No. 1:24-cv-01523, in the United States District Court for the District of Maryland against Defendant shortly after receiving Defendant's notice letter regarding the Data Incident. The cases were then consolidated into this first-filed case. *See* ECF Nos. 5, 22. Subsequently, the Court appointed Jeff Ostrow, Ben Barnow, Danielle Perry, and Jason Rathod as interim class counsel. *See* ECF No. 23.

After discussions regarding the potential for early resolution, the Parties scheduled a mediation for March 26, 2025, with experienced class action mediator Bennett G. Picker, Esq. of Stradley Ronon Stevens & Young, LLP. In advance of the mediation, Plaintiffs propounded informal discovery requests to learn as much as possible about the Data Incident in advance of mediation, and Defendant provided certain information in response to facilitate the mediation. The Parties also exchanged detailed mediation briefs outlining their positions with respect to jurisdiction, liability, damages, and other settlement-related issues. The Parties mediated on March 26, 2025, and after nearly a full day of negotiation, agreed upon the material terms of this Settlement to resolve all claims on a classwide basis. The Parties continued negotiating the terms and finalized the Settlement Agreement for the next few months.

### C.  Timing of Settlement Negotiations

While the case settled at a relatively early stage of these proceedings, the Parties expended significant time and effort investigating the claims and coordinating the cases. Before beginning

settlement negotiations, Plaintiffs sought and obtained information from MedStar and public sources on a number of key topics, including: the number of individuals whose PII/PHI was at issue during the Data Incident; the types of PHI/PII potentially accessed; and the terms of any potentially applicable insurance coverage.

Plaintiffs and their counsel believe that in consideration of all the circumstances, including serious arm's-length negotiations with MedStar, the proposed settlement embodied in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of all members of the Settlement Class. Moreover, achieving a settlement in this case guarantees relief for eligible class members while avoiding the risks of lengthy and expensive litigation.

## III.    THE PROPOSED SETTLEMENT PROVIDES SETTLEMENT CLASS MEMBERS WITH MONETARY AND NON-MONETARY BENEFITS

### A.  Monetary Relief

The Settlement negotiated on behalf of the Settlement Class establishes a $1,350,000.00 non-reversionary cash settlement fund, which will be used to pay for benefits to the Settlement Class, notice and administration costs, Plaintiffs' service awards, and attorneys' fees, costs, and expenses. SA ¶ 77. Specifically, under the Settlement, Settlement Class Members shall have the opportunity to submit a claim for the benefits outlined below.

### B.  The Settlement Class

The Settlement Class includes approximately 183,079 persons and is defined as "all persons residing in the United States whom Defendant identified as having Personal Information at issue in the Data Incident." *Id*. ¶ 68. Specifically excluded from the Settlement Class are (a) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (b) all persons who are directors or officers of Defendant; (c) governmental entities; (d) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (e) any person found

by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

### C. The Settlement Benefits

When submitting a Claim, Settlement Class Members may choose either a reimbursement of Documented Losses or an Alternative Cash Payment. Additionally, Settlement Class Members may elect to receive Medical Data Monitoring. *Id*. ¶ 82.

#### i. Cash Payment A – Documented Losses

Settlement Class Members may submit a Claim for a Cash Payment for up to $5,000.00 per Settlement Class Member, subject to pro rata adjustment,[2] upon presentment of documented losses related to the Data Incident incurred between January 25, 2023 and the Claim Form Deadline. *Id*. ¶ 82(a). Settlement Class Members will be required to submit reasonable and sufficient documentation supporting the losses. *Id*. By way of example, reimbursable losses may include, but are not limited to, out-of-pocket credit monitoring costs incurred, out-of-pocket losses associated with any fraud or identity theft, such as loss of funds, bank fees, long-distance phone charges, postage, travel expenses, etc. *Id*.

#### ii. Cash Payment B – Alternate Cash Payment

As an alternative to Cash Payment A – Documented Losses, a Settlement Class Member may elect to receive Cash Payment B – Alternate Cash Payment, which is a cash payment estimated to total approximately $100.00, subject to a pro rata adjustment. *Id*. ¶ 82(b).

---

[2] All cash payments may be subject to a *pro rata* increase or reduction based on the number of claims, the approved dollar amounts claimed, and the amount of funds available to disburse after payment of Settlement Administration Costs, the cost of Medical Data Monitoring, and court-approved attorneys' fees, costs, and service awards. SA ¶ 83.

iii.  Medical Data Monitoring

In addition to electing a Cash Payment, Settlement Class Members may elect one year of the CyEx Medical Shield Complete product to monitor medical and healthcare data. *Id*. ¶ 82(c). The product includes one bureau of credit monitoring, health insurance plan ID monitoring, Medicare beneficiary monitoring, medical record number monitoring, Dark Web Monitoring, health savings account monitoring, national provider identifier monitoring, high-risk transaction monitoring, security freeze assistance, and victim assistance. *Id*.

**D.  Notice**

The Parties agreed to engage Kroll Settlement Administration, LLC ("Kroll") as the Settlement Administrator. Kroll is an experienced settlement administrator which will effectively carry out the settlement administration. *See* Declaration of Paul Ferruzzi of Kroll Settlement Administration LLC ("Ferruzzi Decl."), attached hereto as Exhibit C. Within ten (10) days of entry of the Preliminary Approval Order, MedStar will provide the Settlement Administrator with the Class List. SA ¶ 90. The Settlement Administrator shall cause the Postcard Notice to be disseminated to all Settlement Class Members for whom addresses are available via direct mail within thirty (30) days of entry of the Preliminary Approval Order. *Id*. ¶ 91. The Postcard Notice is clear, concise, and provides information about the Settlement as well as the sources Settlement Class Members can go to for additional information. *See id*., Exhibit 1. The Settlement Administrator will also establish and maintain a dedicated settlement website that will contain broad information including but not limited to copies of the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, Expenses, and Service Awards, and Final Approval Order, as well as other relevant information. *Id*. ¶ 75. The Long Form Notice, available at the Settlement Website, is the detailed notice that

5

will include robust information about the Settlement. *See id*., Exhibit 2. MedStar will also post

notice of the Settlement on its website, medstarhealth.org. *Id*. ¶ 58.

The Notice will be designed to reach as many Settlement Class Members as possible and

will meet the requirements of due process. Ferruzzi Decl., ¶ 11. The cost of providing notice and

claims administration will be paid for out of the Settlement Fund. *Id.* ¶ 77.

### E.  Claims, Exclusions and Objection Procedures

The timing of the claims process is structured to ensure that all Settlement Class Members

have adequate time to review the terms of the Settlement Agreement, make a claim or decide

whether they would like to opt out or object. Declaration of Ben Barnow ("Barnow Decl."),

attached hereto as Exhibit B, ¶ 11.

#### i.  Claims

Settlement Class Members will have ninety (90) days from the Notice Date to complete

and submit a claim to the Settlement Administrator. SA ¶ 27. The Claim Form, attached to the

Settlement Agreement at Exhibit 4, is written in plain language to facilitate Settlement Class

Members' ease in completing it. *See id*., Exhibit 4. Claim Forms can be submitted either online

through the Settlement Website, or via mail to the Settlement Administrator. SA ¶ 29.

#### ii.  Opt-Outs

Settlement Class Members will have up to and including sixty (60) days following the

Notice Date to exclude themselves from the Settlement. *Id*. ¶ 51. To be considered valid, the

request for exclusion must be timely mailed to the Settlement Administrator and must be

personally signed by the Settlement Class Member and contain the requestor's name, address,

telephone number, and email address (if any), and include a statement indicating a request to be

excluded from the Settlement Class *Id.* ¶ 95.

### iii.  Objections

Settlement Class Members will also have sixty (60) days following the Notice Date to object to the Settlement. *Id.* ¶ 50. Any Settlement Class Member who wishes to object shall timely file with the Court and send by U.S. Mail to Settlement Class Counsel, Defendant's Counsel, and the Settlement Administrator written objections that: set forth:

a.  the objector's full name, mailing address, telephone number, and email address (if any);

b.  the case name and case number;

c.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

d.  the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

e.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or the Application for Attorneys' Fees, Costs, Expenses and Service Awards, and whether they will appear that the Final Approval Hearing;

f.  the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years

preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years;

g.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

h.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

i.      the objector's signature (an attorney's signature is not sufficient).

*Id.* ¶ 98. Any Settlement Class Member who fails to object in this manner will be deemed to have waived any objections.

### F.  Service Awards, Attorneys' Fees, Costs, and Expenses

The settling Parties did not discuss the payment of attorneys' fees, costs, expenses or Service Awards to the Settlement Class Representatives until after the substantive terms of the Settlement had been agreed upon. *See* Barnow Decl. ¶ 12.

The Settlement Agreement specifies that Settlement Class Counsel will request the Court's approval of reasonable service award to Settlement Class Representatives in the amount of $2,500.00 per Settlement Class Representative. SA ¶ 118. The Settlement Agreement also permits Settlement Class Counsel to seek up to one third of the Settlement Fund for attorneys' fees, plus reimbursement of reasonable costs and expenses incurred in the litigation. *Id.* ¶ 117.

### G. Releases

The releases in this case are tailored to the claims that have been pled or could have been pled relating to the specific Data Incident. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendant related to the Data Incident. *See id.* § XIV.

## IV.    LEGAL STANDARD

Class action settlements must be approved by the court pursuant to Rule 23 of the Federal Rules of Civil Procedure. "Federal Rule 23(e) has been applied and analyzed thoroughly in reported decisions of Maryland's federal district courts and the Fourth Circuit, as well as nationally." *Shenker v. Polage*, 226 Md. App. 670, 683 (2016) (citing *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991); *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983); *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D. Md. 1979)).

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube*, 927 F.2d at 158. The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Birks v. Small Cmty. Specialists, L.L.C.*, No. 8:23-cv-00837-BAH, 2024 U.S. Dist. LEXIS 238933, at *12 (D. Md. Dec. 10, 2024) (the factors set forth in *Jiffy Lube* for assessing class-action settlements "almost completely overlap with the new Rule 23(e)(2)") (quoting *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020). The approval process involves two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants

notice being issued to the class. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota*, 564 F. Supp. at 1384). This first step involves both preliminary certification of the settlement class and an initial assessment of the proposed settlement. *Id.*; *see also Manual for Complex Litigation*, § 30.41 (3rd ed. 1995).

Settlement by compromise is a part of strong judicial policy in the Fourth Circuit favoring resolution prior to trial. *See, e.g.*, *United States v. Manning Coal Corp.,* 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). Settlement spares litigants the uncertainty, delay, and expense of a trial and appeals, while simultaneously reducing the burden on judicial resources.

## V.    ARGUMENT

### A.  The Settlement Class Should be Preliminarily Certified.

Prior to granting preliminary approval of a proposed settlement, the Court should first determine that the proposed Settlement Class is appropriate for certification. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2013); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a). Additionally, Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claim. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. When considering a request for a settlement-only class certification, a district court need not inquire as to the manageability of a case at trial, as the proposal is that there be no trial. *Amchem*, 521 U.S. at 620.

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified, including the landmark settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see also In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case meets all the standards for certification of the Settlement Class under Rule 23 and should be similarly certified.

### i.   The Proposed Settlement Class is Sufficiently Numerous

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members is impracticable. While whether the numerosity requirement is met depends on a court's practical judgment on a given case, here the approximately 183,079 persons are clearly so numerous as to render joinder impracticable. *See Peoples v. Wendover Funding, Inc.,* 179 F.R.D. 492, 497 (D. Md. 1998) (noting "courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement"); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012) (finding a class of 700 satisfied the numerosity requirement). Thus, the Class here is sufficiently numerous to warrant certification under Rule 23(a)(1).

### ii.   Questions of Law and Fact Are Common to the Settlement Class

Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. "Even a single common question will do." *Id*. at 359 (internal quotations omitted).

Courts have previously addressed this requirement in the context of data breach class actions and found it readily satisfied. *See In re Equifax Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209, at *180 (N.D. Ga. Mar. 17, 2020), (citing *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113, at *30 (N.D. Ga. Aug. 23, 2016)) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement), *partially overturned on other grounds*, 999 F.3d 1247, 1284 (11th Cir. 2021); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. 2018) (noting that the data breach complaint contains a common contention capable of class-wide resolution—one type of injury claimed to have been inflicted by one actor in violation of one legal norm).

Here also, the commonality requirement is readily satisfied, as Plaintiffs and Settlement Class Members all have common questions of law and fact that arise out of the same event—the Data Incident. Plaintiffs have a thorough and complete understanding of the facts surrounding the Data Breach itself based on detailed information provided to them prior to Settlement. Plaintiffs allege, *inter alia*, the following questions of law and fact are common to the class:

- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Incident.

- Whether Defendant's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations.

- Whether Defendant owed duties to Settlement Class Members to safeguard their Private Information.

12

- Whether Defendant breached their duties to Settlement Class Members to safeguard their PII;

- Whether Defendant's conduct was negligent.

- Whether Defendant breached contracts it had with its patients, including Plaintiffs and Settlement Class Members.

- Whether Plaintiffs and Settlement Class Members are entitled to damages.

Like in other data breach cases, these common issues all center on Defendant's alleged conduct or other facts and law applicable to all settlement class members, thus satisfying the commonality requirement. *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, at *16–17 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach."); *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1059 ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution."). Thus, the element of commonality is satisfied.

### iii.    Plaintiffs' Claims and Defenses are Typical of the Class

The typicality element of Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . ." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (citation and quotations omitted). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466–67.

13

This requirement is readily satisfied in data breach cases like this one. The Settlement Class Representatives' claims are typical of other Settlement Class Members' claims because they arise from the same Data Incident and involve the same overarching legal theories. *See, e.g.*, *In re Equifax,* 2020 U.S. Dist. LEXIS 118209, at *181.

### iv.    Settlement Class Representatives and Settlement Class Counsel Will Provide Fair and Adequate Representation of the Class

"The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Neither proposed Settlement Class Representatives nor their counsel have any interests antagonistic to the proposed Settlement Class. Proposed Settlement Class Counsel as set forth below are abundantly qualified and experienced in leading class cases efficiently and effectively and have the support of all counsel of record, thus satisfying the adequacy requirement.

### v.    The Rule 23(b)(3) Requirements Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 569 (E.D. Va. 2016).

**Common questions predominate over individualized issues.** Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Id.* at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*,

307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4thCir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of alleged conduct by Defendant. *See, e.g.*, *In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *184; *In re Anthem*, 327 F.R.D. at 311–16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem*, 327 F.R.D. at 312. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *Hapka v. Carecentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185, at *7 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re Home Depot*, 2016 U.S. Dist. LEXIS 200113, at *31 (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

**Class resolution is the superior method of resolving this action.** "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . ." 7A Charles Wright, Arthur Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1779 (3d ed. 2005). Litigating the same claims of approximately 183,079 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *184–85; *In re Anthem*, 327 F.R.D. at 315–16.

Additionally, the proposed Settlement will give the Parties the benefit of finality, and because this case has now been settled pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case . . . would present intractable management problems"). Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of individual cases arising out of the same Data Incident.

In sum, Plaintiffs maintain that the common questions of fact and law that arise from Defendant's alleged conduct predominate over any individualized issues; a class action is the superior vehicle by which to resolve these issues; and the requirements of Rule 23(b)(3) are met. Accordingly, the Settlement Class should be certified for settlement purposes.

### B.  The Terms of the Settlement are Fair, Reasonable, and Adequate, Warranting Preliminary Approval Under Rule 23(a)(4).

After determining that certification of the Settlement Class is appropriate, the Court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the Class. The primary concern in class action settlement approval is the protection of class members whose rights may not have been given adequate consideration during

the settlement negotiations. *In re Jiffy Lube*, 927 F.2d at 158–59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). However, "there is a strong initial presumption that the compromise is fair and reasonable." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991).

In the Fourth Circuit, there are two parts to the analysis in determining whether to approve a class action settlement: (1) adequacy—whether the class's recovery is adequate in comparison to what the class gives up; and (2) fairness—whether the procedure by which the settlement was negotiated was proper. *In re Jiffy Lube*, 927 F.2d at 158–59.

While courts complete this analysis after notice has been issued to the class and a final approval hearing has been held, at the preliminary approval stage the Court need only find that the settlement is within "the range of possible approval." *Horton*, 855 F. Supp. at 827 (citing *In Re Mid-Atlantic Toyota*, 564 F. Supp. at 1384). Here, the Settlement is within the range of preliminary approval and should be approved.

### i.    The Settlement is Adequate and Reasonable

In analyzing the adequacy of a proposed settlement, the Court can consider such factors as: (1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, (5) and the degree of opposition to the proposed settlement. *See In re Jiffy Lube*, 927 F.2d at 159; *Clark v. Experian Info. Sols., Inc.*, No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 28324, at *24 (D.S.C. Jan. 14, 2004). While the Defendant's solvency has not

been put at issue, and the degree of opposition to the Settlement is best measured after notice has issued to the class, Plaintiffs will examine the first three *Jiffy Lube* factors here.

The first three *Jiffy Lube* factors are closely related, and weigh in favor of settlement approval here. The Settlement provides Settlement Class Members with real relief from the harms they claim were caused to them by the Data Incident, and adequate protection from the risk of future harm that they claim. The Settlement Fund established here ensures that Settlement Class Members can receive substantial relief by filing a claim. Specifically, Settlement Class Members who submit valid claims are eligible for either reimbursement of documented losses related to the Data Incident up to $5,000.00 or a cash payment in the amount of approximately $100.00 (subject to a pro rata adjustment depending on the number and amount of claims submitted). SA ¶ 82(a)–(b). Settlement Class Members may also claim one year of the CyEx Medical Shield Complete product to monitor medical and healthcare data. *Id*. ¶ 82(c).

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain—especially where disputed questions of law and fact exist. Data breach litigation is an evolving field and Settlement Class Members have no guarantee of attaining a favorable result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex."). Furthermore, absent an early resolution, the Parties would likely be litigating this action for years to come. In contrast, this Settlement makes significant relief immediately available to Settlement Class Members.

While Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. MedStar has denied, and continues to deny, all liability alleged in the litigation, maintaining that it has meritorious defenses

18

to the claims alleged therein. In the absence of a settlement, Defendant would likely argue the difficulty of evaluating the alleged damages, subjecting Plaintiffs to the risks inherent in trying to achieve and maintain class certification and prove liability.

Indeed, should litigation continue, Plaintiffs would have to immediately survive a motion to dismiss merely to proceed out of the pleading stage and into litigation that could prove costly and time-consuming, without any promise of resolution in their favor. Particularly at the motion to dismiss stage, Plaintiffs would be faced with many issues, such as proving standing and damages.

Moreover, if Plaintiffs survived a motion to dismiss, they would then have to achieve class certification—a significant hurdle that some other data breach plaintiffs have failed to overcome. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *93-94 (D.S.C. May 14, 2024) (denying plaintiffs' motion to certify the class after years of litigation). Settlement Class Counsel believe that MedStar would vigorously oppose class certification and, even if Plaintiffs were successful in certifying the class (which they believe they would be), they could face an interlocutory appeal of any such order. Many resources would undoubtedly be consumed during the continued litigation of this action, with no guarantee of any recovery for Plaintiffs or the proposed class. Then, as class certification is never a settled issue, Plaintiffs would have to expend further time and resources, and incur further risk, to maintain class certification through trial. As discussed above, these risks do not apply to a settlement-only class. *Amchem*, 521 U.S. at 615–16.

As stated herein, Plaintiffs strongly dispute the defenses it anticipates Defendant would likely assert if the litigation were to continue, but their success at trial is far from certain. Through

19

the Settlement, Plaintiffs and Settlement Class Members gain significant relief without having to face further risk of not receiving any relief at all.

        ii.    <u>The Settlement is Fair.</u>

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement was fair and reached in good faith and without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *S.C. Nat'l Bank*, 139 F.R.D. at 339 (citing *In re Jiffy Lube*, 927 F.2d at 158–59).

Here, the Settlement is the result of arm's-length negotiations over a period of several months, including a mediation before an experienced mediator, between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in these cases. Barnow Decl. ¶¶ 3–7. Before discussing potential settlement, the Parties completed an extensive investigation and exchanged information about the number of persons allegedly impacted by the Data Incident, and the types of Private Information potentially accessed in the Data Incident. *Id*. These discussions and investigations helped the Parties fully understand the claims, defenses, and risks of continued litigation. *Id*. Moreover, counsel for Plaintiffs entered the case with significant experience in class actions generally, and data breach class actions in particular. *See* Motion to Appoint Interim Co-Lead Class Counsel, ECF No. 15. The final Settlement Agreement is the result of prolonged and serious arm's-length negotiations between counsel for the Parties, who fought hard for the interests of their respective clients. Barnow Decl.¶¶ 3–7. As such, and because there are no obvious deficiencies, the Settlement meets the requirement of fairness. *In re Novant Health, Inc.,* No. 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949, at *17 (M.D.N.C. June 17, 2024) (finding

the factor satisfied in a data privacy case that settled before resolution of a motion to dismiss and formal discovery).

Notably, the value per Settlement Class Member of just the $1,350,000 cash portion of the Settlement amounts to approximately $7.37 per Settlement Class Member. This exceeds the cash value in other exemplary data breach settlements and demonstrates that this Settlement provides an excellent recovery and is well within the range of approval:

| Case Title | Settlement Amount | No. of Class Members | $ Per Class Member |
|---|---|---|---|
| *Winstead v. ComplyRight, Inc.*, No. 1:18-CV-4990 (N.D. Ill.) | $3.025M | 665,689 | $4.54 |
| *Madkin v. Automation Personnel Services, Inc.*, No. 2:21-cv-1177 (N.D. Ala.) | $1.37M | 299,253 | $4.59 |
| *Bingaman, et al. v. Avem Health Partners Inc.*, No. CIV23-130-SLP (W.D. Ok.) | $1.45M | 271,303 | $5.34 |
| *Kesner, et al. v. UMass Memorial Health Care, Inc.*, No. 2185-cv-01210 (Mass. Supp. Ct.) | $1.25M | 209,047 | $5.74 |
| *In re C.R. England, Inc. Data Breach Litigation*, No. 2:22-cv-374-DAK (D. Utah) | $1.4M | 224,572 | $6.23 |
| *Reynolds v. Marymount Manhattan College*, No. 1:22-cv-06846 (S.D.N.Y.) | $1.3M | 191,752 | $6.78 |
| *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC (D. Mass.) | $1.2M | 164,000 | $7.27 |

## C. The Proposed Claims Administrator Will Provide Adequate Notice.

The Court has complete discretion in determining what constitutes a reasonable notice scheme, both in terms of how notice is given and what it contains. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2006). Due process requires provision of the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Such Notice should be individual, where class members can be identified through reasonable effort. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

The Notice provided for by the Settlement Agreement is designed to be the best practicable and to meet all the criteria set forth by the Manual for Complex Litigation. SA, Exhibits 1–3. Specifically, the Notice plan provides for direct and individual notice to be provided to Settlement Class Members via US mail, using the last-known addresses that MedStar has for the Settlement Class Members. *Id.* ¶ 89. The Settlement Administrator shall also provide notice via publication if necessary and to the extent such notice is deemed appropriate by the Parties in consultation with the Settlement Administrator to provide the best notice practicable under the circumstances. *Id.* ¶ 58. In addition to the individual direct notice provided, the Settlement Administrator will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the forms of Long Form Notice and Claim Form approved by the Court, as well as this Settlement Agreement and other relevant court documents. *Id.* ¶ 75.

The notices themselves are clear and straightforward. *See id.*, Exhibits 1–3. They define the Settlement Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested Service Awards for the Settlement Class Representatives as well as the amount that proposed Settlement Class Counsel intends to seek in attorneys' fees, costs, and expenses; explain

procedures for making claims, objections, or requesting exclusion; and describe the date, time, and place of the Final Approval Hearing. *Id*.

The Notice here is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. *See, e.g.*, *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (finding direct mail notice to each class members' last known address—and a second notice if the first was undeliverable—was the best practicable and satisfied notice requirements); *In re Mut. Funds Inv. Litig.*, No. MDL 1586, 2010 U.S. Dist. LEXIS 57623, at *30 (D. Md. May 19, 2010) (approving notice via direct mail); *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011) (granting final approval where notice was mailed directly to class members, and administrator maintained a class website and telephone support line).

### D.  The Court Should Appoint Settlement Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). For the reasons outlined herein as well as in Plaintiffs' Motion to Appoint Interim Class Counsel (ECF No. 15), the Court should appoint the experienced and efficient team of Jeff Ostrow of Kopelowitz Ostrow P.A., Ben Barnow of Barnow and Associates, P.C., Danielle Perry of Mason LLP, and Jason Rathod of Migliaccio & Rathod LLP as Settlement Class Counsel under Rule 23(g).

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members significant relief in the form of reimbursements for expenses incurred due to the Data Incident or an alternative cash payment, as well as medical data monitoring. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action Settlement, certify the Settlement Class, and direct Notice to issue to Settlement Class Members.

Dated: June 6, 2025                                    Respectfully submitted,

                                                       /s/ Jason S. Rathod
                                                       Jason S. Rathod
                                                       **Migliaccio & Rathod LLP**
                                                       412 H Street NE
                                                       Washington, D.C. 20002
                                                       Tel: 202-470-3520
                                                       jrathod@classlawdc.com

                                                       Jeff Ostrow*
                                                       **KOPELOWITZ OSTROW P.A.**
                                                       1 W. Las Olas Blvd., Ste. 500
                                                       Fort Lauderdale, FL 33301
                                                       Telephone: (954) 525-4100
                                                       ostrow@kolawyers.com

                                                       Ben Barnow*
                                                       **BARNOW AND ASSOCIATES, P.C.**
                                                       205 West Randolph Street, Suite 1630
                                                       Chicago, IL 60606
                                                       Tel: 312-621-2000
                                                       Fax: 312-641-5504
                                                       b.barnow@barnowlaw.com

                                                       Danielle L. Perry*
                                                       **MASON LLP**
                                                       5335 Wisconsin Avenue, NW
                                                       Suite 640
                                                       Washington, DC 20015
                                                       Telephone: (202) 429-2290
                                                       dperry@masonllp.com

*Interim Co-Lead Class Counsel*

*\*pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2025, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court via the Court's CM/ECF system, which will cause a copy to be electronically served upon all counsel of record.

*/s/ Jason S. Rathod*
Jason S. Rathod
